17-3998. Good afternoon, Your Honors. My name is Joshua Bardaven, attorney for Petitioner Mr. Galdamez. I've reserved two minutes for rebuttal. That's fine. Thank you, Your Honors. Mr. Galdamez was targeted on account of his membership in two particular social groups. That is, Salvadorian males between the ages of 15 and 29 and Salvadorian males between the ages of 15 and 29 who refused to join the MS-13 gang. There are three issues presented before this court. First, whether the BIA engaged in impermissible fact-finding. Second, whether the BIA erred in determining that Mr. Galdamez was not a member of a particular social group. And finally, whether there has been intervening case law that requires remand for the agency to first review the legal and factual issues before the agency, before this court can reach a determination. I would like to start with that third issue, whether or not a remand is required. This issue has not been addressed. I'm sorry. Hello? Yes. Oh, okay. I'm sorry. I thought I heard somebody speaking. So, with respect to the third question, whether remand is required based on new case law, this issue has not been addressed in the briefing. After the board issued a determination on the question of a particular social group, there was a precedential decision issued by the Attorney General in a matter of AD addressing the question of claims based on persecution, either past persecution or fear of future persecution by gang members, and that the government, a person's home country's government, was unwilling or unable to protect them from those private actors. And that is a matter of AB. In Scarlet v. Barr, a 2020 decision issued by this court remanded for the board to address this issue in the first instance based on this new case law. This new case law has not been addressed in this specific case, and I think at the very least, the matter should be remanded for the board to make a determination based on a matter of AB, whether or not the respondent or the petitioner in this case, Mr. Galgamesh, has made out a claim based on this new case law. With respect to impermissible fact-finding, I would draw the court's attention to page five of the record, the third page of the Board of Immigration Appeals decision, where the board addressed the background materials that were not addressed by the immigration judge. There are two full paragraphs where the board specifically addresses the background materials relating to fears of persecution on account of refusals to join gangs and young males that meet the particular social group that were alleged or argued before the immigration judge. And none of those arguments were addressed by the immigration judge. None of the background materials addressed by the board or raised by the board were addressed by the immigration judge, and therefore were addressed in the first instance by the Board of Immigration Appeals, and therefore constitute impermissible fact-finding. If the board felt that this material, this background material that hadn't been addressed by the immigration judge, should have been addressed, then the proper instance based on the regulation, this court's precedent, the board's precedent, should have been to remand the matter back to the immigration judge for addressing in the first instance. Instead, the board chose to address each specific quote that they raised, each specific document that they were citing to in their decision to refute the arguments raised by Mr. Galdamez in his appeal to the Board of Immigration Appeals, rather than having the respect to the third instance regarding a particular social group. I do believe that the matter should be remanded because of the first argument that we raised, which is matter of AB and Scarlett v. Barr, and that the issue of a particular social group should be addressed by the agency in the first instance, rather than this court. I won't belabor or repeat the arguments raised in our brief, because much of those arguments were in some way addressed by matter of AB, and I'm happy to answer any questions by the court. Thank you very much. Judge Lynch. Yes, Mr. Bardavid, is it? I'm sorry, I missed how you pronounced your name. Bardavid. Okay, Mr. Bardavid. Doesn't the immigration judge say at page eight of his opinion that, quote, there is no indication on the record that the gang members who recruited respondent had or will have any motives other than increasing the size and influence of their gang? Yes, but why isn't that a fact-finding nonetheless that the BIA could apply to any particular social group you want to suggest, whether it's young Salvadoran males who refuse to join gangs or just plain young Salvadoran males? The immigration judge, didn't he make a finding that there's no essentially criminal motives? Your Honor, because there's a difference between political opinion and particular social group. I get that. I understand that, but this wasn't a fact-finding that it wasn't political opinion. It isn't a fact-finding. It's a fact-finding that there's no evidence of any motive other than increasing the size and influence of their gang. So why doesn't that apply to all groupings or all rationales for why they abused your client? Well, Your Honor, not to give an overly complex answer, but the first would be that if you read the entire paragraph that Your Honor is referring to, starts on page seven of the judge's decision, page 73 of the record, and he actually links that sentence that Your Honor is referring to to the prior opinion where he's referring to political opinion. So it's unclear from that sentence whether or not he's referring exclusively to a political opinion, which is kind of a separate whistleblower strain of cases, of case law that might be applicable. And again, it's unclear which is precisely the point because it's unclear if he's exclusively referring to political opinion or also incorporating social group, whether or not the matter should be remanded for clarification of that specific issue, particularly where a matter of AB does distinguish those two issues. Secondly, the fact that he's referring to, there's no indication on the record that the gang members who recruited the respondent had motives other than increasing the size of the income to their gang. There's no indication that he, in fact, was referring to the background materials. It appears from that sentence, he's exclusively referring to Mr. Galdem as his testimony. And the background materials, which were cited to both before the immigration judge, on appeal before the board of immigration appeals, as well as before this court, indicate that there's something more to it. And there's no indication that the immigration judge in that sentence was considering anything other than Mr. Galdem as a specific testimony. And that's part of our argument is that the judge, the immigration judge, didn't consider the background materials. The board cited to them. Okay. I think I understand your answer. The other question I have relates to your argument about AB. And what concerns me is this wasn't raised in the briefing, as you say. But it also wasn't much raised in your argument in the sense that you said, well, there's this new case and in some other situation, this court remanded to reconsider a case in light of AB. Now, I haven't reread AB in connection with this case because I didn't realize it was going to come up. My recollection of it was that it by and large made life harder for applicants for asylum. And I'm just wondering if you could at least give us some clue as to why you think that what was said in that case is helpful to your client in some way that it would be addressed that case? I will be very frank. Matter of AB certainly made things more difficult. I don't think that matter of AB made it more beneficial to these types of claims. Nevertheless, I do believe that Scarlett v. Barr, which was not addressed by the briefing and I'm happy to address it in a 20HA letter because it was issued just last year. And I don't want to prejudice the government. Well, yeah, but Mr. Bardavid, all I want to know is you're saying, well, there's new authority. And so it would make sense to ask the agency to address the new authority. And maybe I shouldn't even have referred to whether that case is good or bad for immigrants generally. The question is just, don't you have to tell us something about why there's some reason to think that a remand to consider this case in light of that decision of the attorney general would somehow make a difference or that that decision changes the law in a way that undermines what the agency did in this case? Absolutely, Your Honor. And that's why I would refer to Scarlett v. Barr, which is basically what this court said in a precedential decision was it doesn't know. That there is no way to know whether or not matter of AB can impact, change, benefit, or harm an applicant for asylum case. And that it's appropriate that the agency addressed it in the first instance. And so you think that would mean that pretty much any case that involves asylum and gangs, which was decided before that decision needs to be sent back to the agency? Is that what we implied or said in Scarlett? No, no, I wouldn't say that, Your Honor. What I would say is that in Mr. Galdemez's case, which very much mirrors the Scarlett v. Barr argument, although Scarlett v. Barr dealt with an applicant from, I believe, Jamaica. I think that based on the claim of unwilling and unable to control the gangs and possible cooperation with the gangs, based on the evidence that we cite in our background materials and in our briefing, that in this specific case, it would require remand. I don't think it would require a universal across-the-board remand for every single case that proposed. Okay, well, that's all the questions I had. Thank you. Judge Marrero. Thank you. The petitioner testified that he did not know of any other young people targeted by the gang, and this is in the record at 155. How could he have been targeted based on his status as a young person in light of that testimony, which, by the way, the IJ indicated he found the petitioner credible? Well, I would start with the very fact that he was targeted, that he was found credible, and so for the purposes of this petition for review, his testimony is to presume to be true, and therefore, we have to accept as a matter of the record that he was, in fact, targeted, and so whether or not he's aware of other individuals being targeted would not impact whether or not he was specifically targeted, and then second, I would draw to the court's attention to the background materials which were accepted by the immigration judge and the board that individuals in similar circumstances as him were, in fact, targeted. Thank you. Counsel, I have a couple of questions going to the state of the record. My understanding is that your client has abandoned any claims under the Convention Against Torture. Is that right? That is correct, Your Honor. Yes. Okay, and also, just to confirm, you're not arguing on appeal that he was persecuted by MS-13 based on an imputed political opinion of opposition to MS-13? That is correct. No, we are not, Your Honor. That's all I have. We'll hear counsel for the Attorney General. Good afternoon, Your Honors. Can you hear me okay? Yes, we can. Okay, may it please the court, my name is Julia Tyler, and I represent the Attorney General in this case. Your Honors, petitioner claims in this case that the board erred by conducting impermissible fact-finding. Specifically, the petitioner claims that the board searched the record to draw its own inferences from evidence that was ignored allegedly by the immigration judge, and then relied on those factual findings to conclude that Galdena's failed to demonstrate a nexus between persecution and protected ground. Your Honors, everything about that claim is incorrect. First, the immigration judge did not ignore any of Galdena's evidence, just because he didn't exhaustively discuss it. The immigration judge specifically referenced the background evidence that Galdena's offered on country conditions in El Salvador, and specifically referenced that information as reflecting high levels of crime and violence in El Salvador at page 74 of the record. We all know the case law is clear and exegesis is not required. Nor did the board have to search the record to draw its own inferences from the background evidence. The board was responding to Galdena's argument on appeal that his evidence could only mean one thing, that he was targeted on Salvadorian males aged 15 to 29. The board highlighted Galdena's own testimony and did not agree with Galdena's assessment of the country conditions evidence on which he seemed to place so much emphasis on appeal. Now, if they had not addressed this background evidence, Galdena's might be expected to argue on appeal that the board had ignored his argument, and they certainly did not want to do that. Third, it's important to remember that the board did not find any different facts from the immigration judge in Galdena's case. It agreed with the immigration judge that Galdena was a victim of crime perpetrated by gang members who wish to increase their wealth and influence, not because of Galdena's alleged membership in a gang. Many of the immigration judge's findings were quite broad. He says at page 78 of the record, the immigration judge found there is no indication on the record that the gang members who recruited respondents had any motive other than increasing the size and influence of their gang. Just to highlight a few other comments, and actually fact finding of the immigration judge, was that they sought to recruit the respondent not because he had somehow become a member of any of the group that he proposes. The immigration judge also cited many cases that it compared to this one where the applicant had been a victim of gang violence, noting that Galdena was not protected on any, was not targeted, I'm sorry, on any protected basis, but suffered from the gang's enterprise in the area, citing MEVG. And the immigration judge acknowledged that this was not a blanket rejection of factual scenarios involved in gangs, but found that Galdena had not distinguished his case from these board precedents. And the board upheld all of these findings, despite what Galdena was saying about his own evidence, and found that Galdena's age was at most of tangential concern. Now, in this court's decision in Belortaja, the court makes quite clear that the regulation of 8 CFR 1003.1B34 does not restrict the board's ability to re-evaluate evidence that has previously been obtained by the immigration judge. In that case, the court found that the regulation was intended to restrict the introduction and consideration of new evidence and proceedings before the board, but not the re-evaluation of evidence obtained by the immigration judge previously. And in Wallace, this court found that a review of the factual record, which is what the board did here, does not automatically convert its determination as to whether a petitioner warrants release into improper fact-finding. What the board did here was it reviewed the factual record and found and concluded that the evidence that Galgamesh pointed to did not undermine the that there was no other motive at work. I wanted to also get back to the issue of a remand and specifically matter of AB. I would point out that matter of AB was issued, I think, several weeks ago, and I didn't see any 28-J on matter of AB. I did not see a 28-J on this Scarlett case that do feel comfortable saying, having reviewed matter of AB, that it has no impact on this case and there is no reason to remand because of it. And the reason is because matter of AB simply affirms the board's decision in matter of LEA on the issue of nexus and simply reiterates that in order to establish nexus, one must find both but-for causation and proximate causation. And in this case, Mr. Galgamesh had neither. He was not, it is not a situation that but-for him being a Salvadorian male between the ages of 15 and 29 that he was targeted. So he didn't even get past the very, very first stage of the nexus test under matter of LEA, which was affirmed by the most recent case of matter of AB. I think it's also important to go over very quickly Mr. Galgamesh's testimony because I think there's a slight mischaracterization in Galgamesh's opening brief. Mr. Galgamesh said that he felt that perhaps he was targeted by the gang members maybe perhaps because I'm young. And he said, I think that the gangs are able to manipulate young kids. He never said anything about Salvadorian men. And he certainly never said anything about Salvadorian men between the ages of 15 and 19. He said that young kids are joining gangs and killing people. And I think we can all agree that a male between the ages of 20 and 29 is not a young kid. In fact, Galgamesh in his supporting affidavit said that he believed that gang members targeted him because they knew that he was living alone with his grandparents. And then in testimony before the immigration judge, he said he didn't know why he was being targeted. He only speculated since I'm young, perhaps. Then he didn't know anyone. He refuted the notion as you raised Judge Marrero, that he didn't know anyone else who had been targeted. So he wouldn't know any, he would have no reason to know why they were threatening any other young individual where he didn't see any of them being stopped or threatened outside of his school. This lack of evidence, your honors, is sufficient to doom his claim. Country conditions, as this mentions the petitioner. And in Lynn, this court required particularized evidence beyond general country conditions to support a fear-based claim. So even if, and even if the background evidence in this could overcome Galgamesh's own direct testimony that he didn't know why he was targeted, but he assumed that it was because he was a young kid who lived with his grandparents, this background evidence does not prove nexus in this case. In fact, it's not even arguably relevant to nexus in this case. It is relevant to social distinctions with regard to cognizability, which the board did not even reach. So it is true that this evidence shows that 15 to 29-year-olds have the highest homicide rate, but as the board noted, nexus is not established simply because a particular social group exists and its members experience harm. And it's also true that this evidence shows that young men, according to the World Bank, comprise the bulk of both victims and the perpetrators of violence in Central America. So what the board was saying, and I think what could easily be concluded is that this evidence shows that there are many gang members that between the ages of 15 to 29, there's a lot of intra-gang violence, which would explain a lot of these high homicide rates. And also that they're sort of running around in the same circles, which would cause them to come into contact with one another. Excuse me, you have a minute left. Okay. I would also comment that with regard to this impermissible fact finding, he never filed a motion to remand, which is required by 8 CFR 1003.1 D34. And he should have if he thought that the immigration judge failed to make fact findings that required further review. And with that, I will take your questions. Thank you very much. Judge Lynch. Yes. Ms. Tyler, I just have one question or maybe something with a follow-up. Do you agree that the petitioner here in before the immigration judge raised two different social groups, one just young men from 15 to 29, and the other young men 15 to 29 who refused gang membership? Is that a fair reading of the record or not? I think it is a fair reading that he raised two groups. I would just highlight for you, Your Honor, though, that Mr. Galdamas did not make that argument that considering that other group in the first instance was impermissible fact finding on appeal to this court. So I would argue that it was waived. And secondly, he never filed a motion to remand arguing that the immigration judge failed to consider one of his particular social groups. I would also say that there's substantial overlap between the two groups. And far from being refined, the group that he is identifying and highlighted before the board was a broader group. And I don't think that remand to the immigration judge was necessary because the board was able to look at the evidence that he was highlighting and found that it did not undermine the immigration judge's findings, that there was nothing else at work other than criminal gang activity. Okay. That anticipated my next question. So thank you very much. Thank you. Thank you. I have a question that comprises several components. In your brief, this is at pages 21 and 22, you write and it's a quote, the board rejected Galdamas' nexus argument, logically observing that the correlational relationship with justice plausibly be explained by the fact that individuals between the ages of 15 and 29 are the same age as most gang members and thus face the highest chances of being encountered by the gangs on a daily basis. End quote. Of course, the petitioner would disagree with that conclusion. But given that disagreement, is it fair to say that the board reached its own explanation among potentially conflicting conclusions? If not, where does the IJA draw conclusions similar to those made by the board? Given that precedence dictates that the very essence of the fact finders is to select from among conflicting inferences and conclusions, that which is considered most reasonable, why did the board not engage in permissible fact finding by seemingly selecting from among conflicting inferences here? Well, thank you for the question. That's very interesting. I think that the important thing here is not to think about the evidence that was submitted as proving one thing or another. Because I just don't see this evidence that way. And if you look at the charts and the graphs and USAID and the law, the law is exceptionally broad. It was there to protect men and women and the elderly and really all people in El Salvador to create educational rights and job rights and all kinds of things. But I think what the board was doing was responding to Galdemez's argument that he could and he did establish nexus, particularize to his situation on those particular days in his particular town, based on evidence that simply shows that 15 to 29-year-olds in El Salvador males are more likely to be killed, not targeted by gangs, just killed. These are homicides. And there are articles that talk about targeting. But again, we're not talking about two conflicting versions of how this evidence can be established. The evidence shows what the evidence shows. It is homicides among El Salvadorian males between 15 to 29. And what the board did, which is completely in keeping with the regulations and in keeping with this court's precedent, was determine whether or not the evidence that he was highlighting undermined the immigration judge's finding, fact finding on nexus. And it found that it did not. I hope I answered your question. Thank you. All right. So we'll hear from Mr. Bardavid, who's reserved two minutes. Thank you, Ernest. I would like to just briefly address the government's argument with regards to 8 CFR 1003.D34, which the government is arguing there should have been a request for remand. That is respectfully, I would assert, a mischaracterization of what the regulations state. The regulations state specifically that, and I'm quoting, a party asserting that the board cannot properly resolve an issue, an appeal without further fact finding must file a motion for remand. That's indicating that if the party believes that further fact finding is required, then a motion to remand is required. Not that the board can go ahead and engage in its own fact finding, which 8 CFR 1003.1D3 explicitly prohibits, which states, and I'm quoting, the board will not engage in de novo review of findings of fact determined by an immigration judge. So that is a mischaracterization to say that a motion to remand was required as if we were supposed to anticipate that the board would engage in permissible fact finding. We do not believe that further fact finding was required, and therefore a motion to remand was not required, and I think asserting that one was required is a mischaracterization of the regulations. With respect to whether or not we properly raised the question of impermissible fact finding with respect to the two social groups asserted, I would draw the court's attention to our brief before this court, pages 18 to 25, where that is an entire section of our briefing that we argue, which was also argued before the BIA, and therefore has been properly argued before the board, exhausted before the board, and exhausted before this court. Unless the court has further questions, we will therefore rest on our briefs and ask the court to reverse the determination of the BIA remand for further consideration of the arguments raised. Thank you very much. If Judge Lynch and Judge Marrero have no further questions, we'll reserve decision.